Naomi Loutricia JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09-06-510CR.

Court of Appeals of Texas, Beaumont.

Submitted on Feb. 14, 2008.

Decided Nov. 5, 2008.

Roland Brice Moore III, Houston, for appellant.

Tom Maness, Crim. Dist. Atty., Rodney D. Conerly, Asst. Dist. Atty., Beaumont, for state.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

In February 2002, a grand jury returned a three-count indictment charging appellant, Naomi Loutricia Johnson, with the offenses of murder, manslaughter, and criminally negligent homicide. The case proceeded to trial in April 2004, with appellant apparently testifying in her own defense. This trial ended with the jury unable to reach a verdict necessitating the trial court's declaring a mistrial. Retrial commenced in October 2006, with the State announcing it was proceeding only on the murder charge and abandoning the remaining counts. Appellant did not testify in her retrial. The jury found appellant guilty and the trial court assessed punish-ment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of thirty-five years. An affirmative finding of the use of a deadly weapon also appears in the judgment of conviction. Appellant raises the following four issues for our consideration:

1. The trial court committed reversible error when it refused to give a jury instruction on the issue of self-defense.

2. The trial court committed reversible error when it refused to allow the defense's expert witness to testify on the subject of the defendant's state of mind at the time of the death of the complainant in violation of the statutory law of Texas and of appellant's right to due process.

3. The trial court abused its discretion when it excluded the defense's expert witness on the subject of the adequacy of the state's investigation.

4. Over defense objection, the court abused its discretion when it allowed the State to elicit hearsay testimony in violation of appellant's right to due process and a fair trial.

Because the issues raised in this appeal are primarily legal ones, we will present a brief background statement and then allude to factual evidence as it becomes necessary to a proper discussion of the parties' contentions.

With one significant exception, that being the question of self-defense, the basic facts are not in dispute. In the early morning hours of December 15, 2001, appellant stabbed T.L.B., her boyfriend of five years, in the chest with a pocket knife she carried in her purse. The stabbing took place in the front yard of appellant's home in which T.L.B. had also resided since 1996. T.L.B. sustained a three-quarter inch stab wound to the chest which

pierced the pulmonary artery and continued on into the aorta causing his death.

## INSTRUCTION ON SELF–DEFENSE

 Prior to commencing deliberations, the jury in a criminal case must be provided with "a written charge distinctly setting forth the law applicable to the case[.]" TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). For example, under the proper circumstances, a trial judge is required to instruct the jury on any statutory defense, including justification, whenever it is raised by the evidence. *Walters v. State,* 247 S.W.3d 204, 208–09 (Tex. Crim.App.2007) (citing TEX. PEN.CODE ANN. §§ 2.03, 2.04 (Vernon 2003)). Thus, a defendant has the right to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony raising the defense is not worthy of belief. *See id.* at 209; *Granger v. State,* 3 S.W.3d 36, 38 (Tex.Crim.App.1999). This statutory mandate is designed to insure that the jury, not the trial judge, will decide the relative credibility of all the evidence. *Granger,* 3 S.W.3d at 38 ("When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury.") (citing *Woodfox v. State,* 742 S.W.2d 408, 410 (Tex.Crim.App. 1987)); *Fleming v. State,* 973 S.W.2d 723, 725 (Tex.App.-Beaumont 1998, no pet.) (citing *Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974)). Indeed, as pointed out by Professors Dix and Dawson:

> Traditionally, Texas Law gave the defendant the right to require the trial court to submit to the jury any defensive theory supported by the evidence. In many of the cases, no distinction was made between a defensive theory that merely negated an element of the offense and a defensive theory that was in the nature of a confession and avoidance, that is, that did not negate an element but that relied upon an independent justification for committing the offense.

> An example of the former would be alibi, while an example of the latter would be self-defense.

> . . . .

> This approach had the advantage for the defense of the trial court legitimating for the jury the defensive theory or theories relied upon. Such an instruction would be expected to form the basis for the defense argument to the jury.

43 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 36.42 (2d ed.2001) (footnotes omitted). Furthermore, when inconsistent evidence elicited at trial supports more than one defensive theory, the defendant is still entitled to an instruction on every theory raised, even if the defenses are themselves inconsistent or contradictory. *VanBrackle v. State,* 179 S.W.3d 708, 714 (Tex.App.-Austin 2005, no pet.) (citing *Booth v. State,* 679 S.W.2d 498, 501 (Tex. Crim.App.1984)).

 A defendant need not testify in order for a defensive issue to be sufficiently raised. *Smith v. State,* 676 S.W.2d 584, 585, 587 (Tex.Crim.App.1984); *VanBrackle,* 179 S.W.3d at 712. Defensive issues may be raised by the testimony of any witness, even one called by the State. *See Woodfox,* 742 S.W.2d at 408–10; *Jackson v. State,* 110 S.W.3d 626, 631 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd.).

At the time of the incident in question, the applicable law governing self-defense

read as follows: [1]

### § 9.31. Self–Defense

(a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

. . . .

### § 9.32. Deadly Force in Defense of Person

(a) A person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31;

(2) if a reasonable person in the actor's situation would not have retreated;. and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

On the day of the stabbing, appellant provided a written statement to the police. This statement was introduced into evidence before the jury as State's Exhibit No. 87. The more pertinent portions of appellant's statement appear in the record as follows:

This all started on Friday, December 14, 2001. I came home at 5:53 PM. I remember looking at the clock in my car. [T.L.B.] got home at 6:13 PM. I know because I looked at the clock on the TV. [T.L.B.] went off on me about not cooking pork chops. He was cussing at me and calling me "b* * * *," "sorry motherf* * * *", and "a* *hole". He said I wasn't looking for a job and that no other motherf* * * * * 'n* * * * * would put up with my sh* *. [T.L.B.] was all up in my face and wanted to know where I'd been. I told him to get out of my face and leave me alone. He tried to suck on my neck but I told him to stop. He smelled my perfume and wanted to know where I went since I wasn't working. I said I took my momma to The White House 'cause there was a sale. [T.L.B.] went off about my momma not paying for gas and he wanted to know why we went in the Lincoln instead of my momma's Cadillac. He grabbed my purse and dug around in it. He took the tops off my perfumes and spit on my shoes. I was watching Family Feud on channel 161 and he took the remote control from my hand and changed the channel. I just ignore him. When he took a shower, I turned the channel back to 161. After [T.L.B.] took

---

1. Although the legislature has since amended sections 9.31 and 9.32 of the Texas Penal Code, the offense for which appellant was convicted occurred on December 15, 2001, which was before the September 1, 2007, effective date of the amendments. Thus, our analysis of the instant appeal is governed by the prior versions of these sections. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 9.31, 1993 Tex. Gen. Laws 3586, 3598 (current version at TEX. PEN.CODE ANN. § 9.31 (Vernon Supp.2008)); Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, sec. 9.32, 1995 Tex. Gen. Laws 2141, 2141–42 (current version at TEX PEN.CODE ANN. § 9.32 (Vernon Supp.2008)). Both sections were amended by Act of March 20, 2007, 80th Leg., R.S., ch. 1, §§ 2, 3, 5(a), 2007 Tex. Gen. Laws 1, 2 (codified as an amendment to TEX. PEN.CODE ANN. §§ 9.31, 9.32 (stating that an offense committed before the act's effective date is governed by the sections in effect when the offense was committed)).

a shower, he got up in my face again and asked me if I loved him. He was getting ready to go to Silsbee to get a haircut. That's where he's from and he goes there every Friday to get a haircut and shave. I told him that I didn't want to go with him, I just wanted to look at TV, but he insisted that I go.

[T.L.B.] drove us to Silsbee in the Lincoln. We left about 8:00 PM. I didn't want to talk to him so he was all upset and said that he ain't gonna talk to himself. At the barber, [T.L.B.] said I was trying to show my cleavage. He's always accusing me of messing around. After the haircut, [T.L.B.] drove us to a house on Harriet in Beaumont. A chick named Wilma lived there. [T.L.B.]'s sister ... and two guys named Chris and Leon. We got there sometime between 9:30 and 10:00 PM. We were all there conversating and after awhile, [T.L.B.'s sister] got up and left 'cause she thought I was making eyes at Chris. Then [T.L.B.] got mad and was thinking me and Chris was trying to be on cool, but we were just talking. [T.L.B.] said we were leaving or I had to walk. We got in the car and [T.L.B.] drove us home. He was steady saying that he was gonna beat my a* * and calling me a b* * * *. We got home around 11:00 PM. We were still arguing. When we got in the house, [T.L.B.] was cussing and clowning and raising hell. I left the front door open so everybody could hear. I don't have a phone, so I was thinking somebody might call the police. He said he was gonna bust me in the head and his fist was all balled. This was all in the living room. [T.L.B.] was grabbing and pulling on me. I took my pocket knife out of my purse. I was holding it in my left hand. Somehow we ended up back outside and he was coming at me and I stabbed him in the chest. It was just reflex 'cause I wasn't gonna let him

hit me. I stabbed him just one time. [T.L.B.] fell and started doing convulsions and stuff. I was hysterical. I tried to help him. I dragged him into the driveway and tried to do CPR, but it didn't work. He died. I didn't know what to do. I dragged [T.L.B.] to the back yard so I could go call for help. I drove the Lincoln to my sister's house at Calder West Apartments. My sister [S.P.] lives there. I told her what happened. She drove me to my momma's house on Woodway 'cause she didn't have a phone at her apartment. When we got there, my sister, [T.N.], called 911. After that, [S.P.] drove us to my house on Amarillo.

Detective Bryan Skinner of the Beaumont Police Department was involved in investigating the incident and initially interviewed appellant at the scene of the offense. Skinner testified on direct examination that appellant admitted stabbing T.L.B. "so he wouldn't jump on her, I believe, is the way she phrased it." Later on that day, Skinner took appellant's statement, set out above, at the police station. During cross-examination, Skinner was asked if anything in appellant's written statement triggered the belief that appellant had been defending herself during her altercation with T.L.B., with Skinner replying, "That is what I believe she was trying to convey, and you can take it at face value. I do not believe the facts substantiated what she was saying." Moments later, the following exchange took place:

[Trial Counsel:] She also told you that she wasn't going to let him hit her, correct?

[Detective Skinner:] That was what she said.

[Trial Counsel:] Does that sound like self-defense?

[Detective Skinner:] That is what she was claiming.

[Trial Counsel:] You believed everything else of her statement, correct?

[Detective Skinner:] No, sir. I said that's what she wanted to say and you can look at it at face value and believe what you want. I said the facts don't substantiate everything that she said.

While appellant chose not to testify, the defense called two of her friends as witnesses. Both witnesses were female and both had observed the relationship between appellant and T.L.B. over the course of several years. They each also testified to having witnessed T.L.B. physically assault appellant on separate occasions. One defense witness who observed T.L.B. grab appellant by the throat, choke, and shove her was of the opinion that T.L.B. was capable of causing appellant serious injury. Each witness also stated that T.L.B. verbally abused appellant on a regular basis.

At the close of the evidence, the trial court submitted its proposed charge to each side. When asked for objections, appellant's trial counsel responded with the following:

> [Trial Counsel]: There is, Your Honor. The objection is to the failure to include an instruction on self-defense in the charge. I would proffer that it would be proper based on the testimony to provide the jury with the self-defense instruction that's followed by force and then deadly force as justification secondary to self-defense, Your Honor.

Trial counsel then proceeded to read into the record a proposed self-defense instruction which appears to contain substantially correct law based upon the facts elicited during trial.[2] Without elaboration, the trial court denied the request for a self-defense instruction. On appeal, appellant's position is that she did present evidence which entitled her to the self-defense instruction requested. The State's reply brief concedes that appellant both properly requested the self-defense instruction and preserved the issue for review, but argues that the evidence presented failed to raise the issue in that there was no evidence indicating appellant was facing deadly force or the threat of death at the time she stabbed T.L.B. As framed, the issue we must decide is whether the evidence adduced at trial by either party, when viewed in the light most favorable to appellant, is sufficient to raise the issue of self-defense. *See Granger*, 3 S.W.3d at 38.

■ At the outset, we note that in *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim.App.1996), the Court reaffirmed its holding that it is not necessary for a jury to find the deceased was using or attempting to use unlawful deadly force against a defendant in order for the defendant's right of self-defense to exist. A person has the right to defend himself from "apparent danger" to the same extent as he would if the danger were real. *Id.* In the instant case, trial counsel's requested instruction specifically included wording on apparent danger. *See* TEX. PEN.CODE ANN. § 9.31(a). As noted above, section 9.32(a)(1) provides that a person is justified in using deadly force against another if he would be justified in using non-deadly force against the other under section 9.31. Section 9.31(a) justifies the use of force against another "when and to the degree

---

2. The request for a particular instruction need not be perfect. *Williams v. State*, 630 S.W.2d 640, 643 (Tex.Crim.App.1982) ("Although a specially requested charge may be defective, it still may serve to call the court's attention to the need to charge on a defensive issue.") (citing *Austin v. State*, 541 S.W.2d 162, 166 (Tex.Crim.App.1976)); *Rogers v. State*, 105 S.W.3d 630, 640 n. 34 (Tex.Crim.App.2003).

he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." This language in section 9.31(a) constitutes the "apparent danger" portion of a self-defense instruction. In *Jones v. State*, 544 S.W.2d 139, 142 (Tex.Crim.App. 1976), the Court of Criminal Appeals held as follows:

> [W]here the evidence raises the issue of apparent danger, the [trial] court, in instructing the jury on the law of self-defense, [should] tell [the jury] that a person has [the] right to defend from apparent danger to the same extent as [she] would had the danger been real, provided [she] acted upon a reasonable apprehension of danger as it appeared to [her] from [her] standpoint at the time.

*Id.* (citations omitted); *see also Hamel*, 916 S.W.2d at 493.

### APPELLANT'S SELF–DEFENSE EVIDENCE

■■ In a homicide prosecution, a defendant who raises self-defense may introduce evidence of the decedent's violent character. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002) (citing Tex.R. Evid. 404(a)(2)). "Specific, violent acts of misconduct may be admitted to show the reasonableness of the defendant's fear of danger, or to show that the deceased was the first aggressor. But specific acts are admissible only to the extent that they are relevant for a .purpose other than character conformity." *Id.* (citing Tex.R. Evid. 404(b)).

■ In the instant case, to establish her "fear" (apparent danger from her standpoint) at the time of the stabbing, appellant introduced testimony from two of her friends who had personally witnessed past physical violence and verbal abuse directed toward appellant by T.L.B. The Court of

Criminal Appeals has recognized this type of evidence as "an established method of proof in self-defense cases, because the law recognizes the fact that future conduct may be reasonably inferred from past conduct." *Fielder v. State*, 756 S.W.2d 309, 319 (Tex.Crim.App.1988). Additional evidence of appellant's "fear" at the time of the stabbing was also before the jury in the form of appellant's written statement, which described the continuing conflict between appellant and T.L.B. from the time both arrived home, with the abusive conduct on T.L.B.'s part escalating throughout the night and into the early morning hours of December 15. When a jury considers whether a defendant acted in self-defense, it must "view the reasonableness of the defendant's actions solely from the defendant's standpoint." *Ex parte Drinkert*, 821 S.W.2d 953, 955 (Tex.Crim.App. 1991) (citing *Bennett v. State*, 726 S.W.2d 32, 37–38 (Tex.Crim.App.1986)). As the Court noted in *Bennett*, the reasonableness of the defendant's fear "must be judged from the standpoint of the accused at the instant he responds to the attack." *Bennett*, 726 S.W.2d at 37–38. Viewed in the light most favorable to appellant, and under the appropriate standards of review, appellant presented sufficient evidence of apparent danger to warrant such an instruction.

■ Along with her description of the escalating threats and verbal abuse by T.L.B. throughout the evening, appellant's written statement factually asserts that in the moments just before she stabbed him, T.L.B. had clenched his fist and had verbally threatened to "beat [appellant's] a* *," and "bust" appellant's head. Moreover, it is important to note that appellant perceived T.L.B. advancing toward her the moment she stabbed him; she explained that she "wasn't gonna let him hit me." As noted previously, for appellant to be

entitled to a self-defense instruction, there must also be some evidence that, at the moment it became necessary for her to use deadly force, it was not reasonable for appellant to have retreated from the immediate situation. *See Werner v. State,* 711 S.W.2d 639, 645 n. 5 (Tex.Crim.App. 1986). The "retreat" provision in section 9.32(a)(2) requires the jury deciding the self-defense issue "to determine whether the appellant had the ability and opportunity to retreat considered as a part of all of the circumstances of the moment." *Stern-light v. State,* 540 S.W.2d 704, 706 (Tex. Crim.App.1976). Indeed, appellant's duty to retreat under section 9.32 did not arise until she believed deadly force was immediately necessary to protect herself against T.L.B.'s use or attempted use of unlawful deadly force. *See Halbert v. State,* 881 S.W.2d 121, 125 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). To undertake a retreat without a reasonable belief that one can escape the imminent threat of the perceived harm is not required. *See Hamel,* 916 S.W.2d at 494. Thus, the duty to retreat encompasses something more than merely leaving the scene of the confrontation. *See id.*

Taking the above-described evidence in the light most favorable to the defense, *see Granger,* 3 S.W.3d at 38, we find evidence of T.L.B.'s threats and verbal abuse directed at appellant throughout their relationship, including the day in question; evidence of the prior instances of physical assaults perpetrated on appellant by T.L.B.; appellant's statement that moments before the stabbing, T.L.B. clenched his fist and threatened to "beat [appellant's] a* *," and "bust" her head; and that as T.L.B. advanced toward appellant, she inflicted the single, albeit fatal, stab-wound to prevent T.L.B. from hitting her, combine to raise the issue that retreat was not a viable or reasonable alternative for appellant at the moment her duty to re-

treat arose. *See VanBruckle,* 179 S.W.3d at 714.

Also contained in the record is Detective Skinner's testimony conceding that appellant's verbal and written statements are consistent with a claim of self-defense. Although Skinner, the State's witness, took issue with this claim because of certain facts and circumstances he had learned from his investigation and certain inferences he apparently made from those facts, the issue before us, as it was before the trial court, is not the truth or credibility of the self-defense evidence presented, as that is within the purview of the trier of fact. " 'The issue before this Court is whether, if the testimony is believed, a case of self-defense has been made.' " *Smith v. State,* 676 S.W.2d 584, 587 (Tex. Crim.App.1984) (quoting *Rodriquez v. State,* 544 S.W.2d 382 (Tex.Crim.App. 1976)).

In addressing appellant's first issue, we do not apply the usual rule of appellate deference to the trial court's ruling denying a requested defensive instruction; instead, we view the evidence in the light most favorable to the defensive issue requested. *Bufkin v. State,* 207 S.W.3d 779, 782 (Tex.Crim.App.2006); *Ferrel v. State,* 55 S.W.3d 586, 591 (Tex.Crim.App.2001). In examining the trial evidence in the light most favorable to appellant's self-defense theory, we find the trial court erred in denying her the jury instruction.

## HARM ANALYSIS

Having found error in the trial court's denial of the requested self-defense instruction, we must now determine whether that error requires reversal. TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g); *see also Posey v. State,* 966 S.W.2d 57, 62

n. 12 (Tex.Crim.App.1998) (holding *inter alia* that *Almanza* applies to an erroneous omission in the jury charge of a timely requested defensive issue raised by the evidence, as the defensive issue becomes law "applicable to the case."). If the charge contains error, and that error has been properly preserved by an objection or requested instruction, reversal is required if the error is "calculated to injure the rights of defendant," meaning there must be some harm. TEX.CODE CRIM. PROC. ANN. art. 36.19; *Trevino v. State,* 100 S.W.3d 232, 242 (Tex.Crim.App.2003); *Almanza,* 686 S.W.2d at 171. "Unless *all* harm was abated, appellant suffered 'some' harm." *Miller v. State,* 815 S.W.2d 582, 586 n. 5 (Tex.Crim.App.1991).

In assessing the extent of the harm, we review the entire record including the jury charge in its entirety; all of the evidence including the contested issues and the weight of the probative evidence; the argument of counsel; and any other relevant information in the record. *Almanza,* 686 S.W.2d at 171. The record indicates that appellant's trial counsel, without objection by the State, questioned the venire extensively during voir dire on the issue of domestic violence. As a subpart of domestic violence, trial counsel began to inquire of the venire regarding the concept of "battered women's syndrome," but was cut off from further questioning by the trial court's prearranged time limits. Additionally, trial counsel's opening statement to the jury concluded with the following:

> And in classic self-defense, ladies and gentlemen, we intend to show that [T.L.B.]'s unfortunate death was brought about by things that caused my client to feel that she needed to defend herself. I ask that you all listen closely to those things because they're prevalent within the context of our defense.

The extent to which appellant was attempting to prove her stabbing of T.L.B. was entirely justified is further apparent from her reliance on the complimentary defensive provisions contained in TEX.CODE CRIM. PROC. ANN. art. 38.36 (Vernon 2005), titled "Evidence in Prosecutions for Murder." Article 38.36(a) permits either party to offer evidence of all relevant facts and circumstances surrounding the killing and the prior relationship that existed between the defendant and the decedent, including all such relevant facts and circumstances going to show the condition of the mind of the defendant at the time of the offense. *Id.* art. 38.36(a). Upon raising self-defense under sections 9.31 or 9.32 of the Texas Penal Code, the defendant, "in order to establish the defendant's reasonable belief that use of force or deadly force was immediately necessary," is permitted to offer relevant evidence that defendant had been the victim of family violence committed by the decedent, and to offer relevant expert testimony as to the condition of the defendant's mind at the time of the offense, including relevant family violence evidence made the basis of the expert's opinion. *See* TEX.CODE CRIM. PROC. ANN. art. 38.36(b). In his final argument to the jury, appellant's trial counsel reiterated the theory that appellant was only defending herself when she stabbed T.L.B. Of course, without a proper self-defense instruction included in the jury's charge, trial counsel was unable to further argue appellant's legal entitlement to an acquittal if the jury agreed with his theory.

Because appellant admitted that she intentionally stabbed T.L.B. to stop him from jumping on her or hitting her, and the jury was not instructed to consider appellant's statutory defensive theory that was sufficiently raised by the evidence, the jury had no choice but to convict appellant of murder. The trial court's error prevented the jury from giving consideration

to acquitting appellant by reason of her immediate need to defend herself from what she reasonably perceived to be an attempt by T.L.B. to cause her serious bodily injury or death.[3] TEX. PEN.CODE ANN. § 2.03(d) (Vernon 2003) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted."); TEX. PEN.CODE ANN. § 9.02 (Vernon 2003) ("It is a defense to prosecution that the conduct in question is justified under this chapter."). We therefore find the trial court's error was calculated to injure appellant's rights. *Almanza*, 686 S.W.2d at 171. From the error in question, appellant suffered some harm. *Id.; see also Guilbeau v. State*, 193 S.W.3d 156, 161 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (when record shows entire defense rests on defendant's right to defend himself from person he admitted killing, error in denying requested charge on self-defense harmed defendant). We sustain appellant's first issue.

Finding reversible error under issue one, we will not address appellant's remaining issues. We reverse the judgment of the trial court and remand for a new trial on the merits.

REVERSED AND REMANDED.

HORTON, Justice, dissenting.

HOLLIS HORTON, Justice, dissenting.

In my opinion, the majority does not properly place the burden of producing evidence on each of the elements of Johnson's claim of self-defense. Because Johnson did not meet her burden of production on two of the elements of her claim of self-defense, the trial court did not err in refusing her requested instruction. As a result, I dissent.

With respect to a claim of self-defense, the defendant bears the burden to "produce some evidence to support the particular defense." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App.2003); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex.Crim. App.1991). If the defendant meets that burden, the State would then shoulder the burden of persuasion to disprove the defense. *Zuliani*, 97 S.W.3d at 594.

To justify her use of deadly force under the version of the Penal Code governing self-defense at the time of the offense, Johnson was generally required to produce some evidence to show that a reasonable person, under the circumstances, would not have retreated. *See* Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, sec. 9.32(a)(2), 1995 Tex. Gen. Laws 2141, 2141–42, *amended by* Act of March 20, 2007, 80th Leg., R.S., ch. 1, §§ 3, 5(a), 6, 2007 Tex. Gen. Laws 1, 1–2; *see also Juarez v. State*, 886 S.W.2d 511, 513–14 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd); *Broussard v. State*, 809 S.W.2d 556, 558–60 (Tex.App.-Dallas 1991, pet. ref'd). The version of the self-defense statute then in effect relieved a person using deadly force from her duty to retreat if, at the time of the incident, the force was used while the victim was "committing an offense of unlawful entry in the habitation of the actor." *See* Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, sec. 9.32(b), 1995 Tex. Gen. Laws 2141, 2142, *amended by* Act of March 20, 2007, 80th Leg., R.S., ch. 1, §§ 3, 5(a), 6, 2007 Tex. Gen. Laws 1, 1–2.

The entry-of-habitation exception does not apply under the facts in this case.

---

**3.** Pursuant to section 9.32, the "deadly force" against which appellant was justified in defending herself is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *See* TEX. PEN.CODE ANN. § 9.01(3) (Vernon Supp.2008).

There is no evidence the victim unlawfully entered Johnson's house; instead, the evidence reflects that for the previous five years, Johnson and the victim resided together in Johnson's home, which was owned by her father. The testimony further reflects that the stabbing did not occur inside the home, but instead occurred in front of the home on the porch or on a sidewalk. There was also no evidence that a reasonable person would not have retreated under the circumstances. The majority errs in utilizing a subjective standard to explain why it believes Johnson did not retreat rather than the "reasonable person" standard required by the statute. *See* Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, sec. 9.32(a)(2).

During the guilt/innocence phase of the trial, Johnson did not testify, and most of the evidence concerning the altercation is based on the statement she gave to the police on the night of the incident. In my opinion, Johnson's statement tends to show that she followed the victim out into the yard, as the altercation that involved Johnson's use of the knife began inside the home. Moreover, there is no testimony from any witness tending to show that Johnson could not retreat before the stabbing occurred. Johnson's statement reflects that there were neighboring homes. Why Johnson did not go to a neighbor's home or stay inside her home when the victim went out is completely unexplained. Where there is no evidence that Johnson tried to retreat or that she could not have retreated, the trial court is not required to instruct the jury on self-defense. *Rainey v. State,* 949 S.W.2d 537, 543 (Tex.App.-Austin 1997, pet. ref'd).

Thus, because the statutory exception did not apply, and because the circumstances of the stabbing do not allow an inference that retreat was not reasonably available, Johnson was not relieved of her burden of production on this element of her defense. Because Johnson did not meet her burden, the trial court did not err in refusing Johnson's requested instruction on self-defense.

We could also sustain the trial court's ruling that refused Johnson's requested self-defense instruction because the self-defense statute applicable here contained a subjective standard of reasonableness. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 9.31(a), 1993 Tex. Gen. Laws 3586, 3598 ("[A] person is justified in using force against another when and to the degree *he reasonably believes* the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." (emphasis added)), *amended by* Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 2, 5(a), 6, 2007 Tex. Gen. Laws 1, 1–2; Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, sec. 9.32(a)(3), 1995 Tex. Gen. Laws 2141 (Person justified in using deadly force "when and to the degree *he reasonably believes* the deadly force is immediately necessary[.]" (emphasis added)), *amended by* Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 3, 5(a), 6, 2007 Tex. Gen. Laws 1, 1–2. "The statute necessarily contemplates that the force used by a defendant must be reasonable as contemplated from the defendant's point of view." *Reed v. State,* 703 S.W.2d 380, 384 (Tex.App.-Dallas 1986, pet ref'd).

While there is certainly evidence that Johnson reasonably feared that the victim might strike her with his fists, there is no evidence to show that Johnson feared she might suffer any serious bodily injury or death at the time she stabbed the victim or that Johnson reasonably believed the victim's fists were deadly weapons. There is no evidence that Johnson thought the use of deadly force (in contrast to using nondeadly force) was immediately necessary to protect herself from the victim's im-

pending assault. The evidence in the record does not show that Johnson subjectively believed that deadly force was necessary to meet the threat that the victim posed to her. The necessity of her proof on this element is illustrated by *Werner v. State*, 711 S.W.2d 639, 644 (Tex.Crim.App.1986), where the Texas Court of Criminal Appeals held that "[i]n absence of evidence of use or attempted use of deadly force by the deceased, the statutory defense permitted by § 9.32 is not available, and a defendant is not entitled to a jury instruction." *See also Dominguez v. State*, 506 S.W.2d 880, 882 (Tex.Crim.App.1974) ("Since appellant did not testify, there is no evidence that appellant believed himself to be in danger or feared that [the] deceased was about to kill or seriously injure him."). On this record, I cannot infer that Johnson, when she stabbed the victim, reasonably thought that he was about to kill or seriously injure her. While it is possible that she might have formed such a subjective belief, there is no evidence that she did. Moreover, we do not know what Johnson subjectively believed at the time because she did not testify. The majority errs when it infers that Johnson believed she was facing deadly force based upon the victim's clenching of his fists and threats of assault. Consequently, I cannot determine that the trial court erred in refusing the requested instruction.

Finally, there is no testimony from any witness that the victim had ever threatened to kill Johnson, or that Johnson had previously expressed fear that the victim might kill her. Nor is there testimony that the victim on prior occasions had

caused Johnson to suffer a serious bodily injury. In *Lavern v. State*, 48 S.W.3d 356, 360 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd), the Fourteenth Court noted that "[w]hile a non-testifying defendant may be entitled to a charge on self-defense, it is rare for the defense to be raised when the defendant fails to testify." I acknowledge that one of Johnson's friends testified that she believed that the victim caused Johnson to suffer a black eye on two prior occasions and that she saw the victim hit Johnson in the head on one occasion.[1] Another of Johnson's friends saw the victim on a prior occasion choke Johnson.[2] Nevertheless, even with the testimony of these two witnesses, the record is devoid of any evidence that the victim had previously caused Johnson any serious bodily injury or that Johnson feared that she might suffer a serious bodily injury on the evening that she stabbed the victim in the heart.

To support a claim of self-defense that justified her use of deadly force, Johnson bore the burden of producing evidence to show her subjective belief that deadly force was immediately necessary to avoid her suffering death or serious bodily injury.[3] On this record, the trial court correctly refused the instruction because Johnson did not met her burden of production on that element of her self-defense claim. Because the majority finds that Johnson was entitled to the defense when on this record she was not, I dissent.

---

1. The testimony does not reflect that Johnson suffered any serious injury in these incidents.

2. The testimony does not reflect that an injury resulted from this incident.

3. " 'Deadly force' means force that is intended or known by the actor to cause, or in the

manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PEN.CODE ANN. § 9.01 (Vernon Supp.2008) (The current version of the statute is cited as no amendments to this definition have occurred since the commission of the offense.).