In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00346-CR
NO. 09-21-00347-CR
NO. 09-21-00348-CR
NO. 09-21-00349-CR

_____

ROY WELTON KIRTLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause Nos. 19-12-17066-CR, 21-04-04794-CR,
19-12-17068-CR, and 19-12-17067-CR

_____

MEMORANDUM OPINION

To resolve the issues in this appeal we must decide whether the

trial court erred in failing to charge the jury on two defenses that the

Appellant, Roy Welton Kirtley, argues were raised by the evidence in his

trial. In issue one, Kirtley argues the trial court erred by failing to

1

instruct the jury on his defense of property claim, instructions that relate to Kirtley's theory that the evidence shows he was justified in using force when he sought to retrieve money in a zip-up bag from his then girlfriend—call her *Farah*—who had snatched the bag from out of his hand.[1] In issue two, Kirtley argues the trial court erred in failing to submit his necessity defense in the case involving his conviction for illegally possessing a firearm. His argument depends on the theory that even though Kirtley as a convicted felon couldn't possess a gun, he needed to retrieve a pistol from another bedroom to defend himself from Farah's sixteen-year-old son, who had fled from the master bedroom after stabbing Kirtley in the arm with a knife.[2]

As to Kirtley's first issue, we conclude that after considering the entire record, Kirtley, was not actually harmed by the omission of his defense-of-property theory in the charge. As to issue two, we note that

---

[1]Tex. Penal Code Ann. § 9.41 (Protection of One's Own Property). As for the names of the alleged victims of the assaults, which led to the appellant's convictions, we have used pseudonyms to protect their privacy. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect to the victims' dignity and privacy throughout the criminal justice process").

[2]Tex. Penal Code Ann. § 9.22 (Necessity); *id*. § 46.04 (Unlawful Possession of a Firearm).

necessity is a confession and avoidance defense, which requires the defendant to have admitted engaging in the conduct before benefitting from a charge that includes instructions on a necessity claim. Because the record doesn't show Kirtley ever admitted he was in possession of a firearm, we hold the trial court did not err in refusing to charge the jury on Kirtley's necessity defense.

We will affirm.

## I. Background

### A. *The assault that led to the fourth indictment, which alleges that Kirtley choked Farah (family strangulation).*

In two issues, Kirtley asks the Court to reverse and remand two of the four judgments from which he appealed, the judgment for assaulting Farah by hitting her with his hand (trial court cause number 21-04-04794-CR), and the judgment on his conviction for unlawfully possessing a firearm (trial court cause number 19-12-17068-CR).

The following discussion of the evidence views the evidence in the light that is most favorable to the jury's verdict.[3] When viewed in that light, the evidence shows that in December 2019, Kirtley was living with

---

[3]*Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019).

his then girlfriend, Farah, in Magnolia, Texas. There were four others living in the home in December 2019: (1) Farah's son, *Chip*, a "repo driver" who was at work when the altercation occurred;  (2) Farah's sixteen-year-old son, *David*, who was asleep on a couch in the living room; (3) David's seventeen-year-old friend, *Jake*, who was also asleep in the living room; (4) and a nineteen-year-old teenager, *Julian*, who was listening to music in his bedroom in the home. Julian testified that based on his relationship with Farah's sons, Farah treated him as a member of her family.

During the trial, Farah testified that Kirtley didn't come home on December 19, 2019, until around 4:30 a.m. According to Farah, when she woke up that morning, she saw Kirtley and told him he was late for work. Then, she took Kirtley's phone into the bathroom. When she examined the messages on his phone, she found texts and pictures, leading her to believe that Kirtley had been with other women.

That discovery, along with what Farah described as a relationship that had been rough, led to an argument. During the argument, Farah told Kirtley she was ending the relationship. Farah also told Kirtley that he needed to leave. Kirtley responded, Farah said, by yelling and

4

screaming. According to Farah, "that's when he [ ] shoved me up against the wall." Farah testified that when Kirtley had her pinned to the wall, he put his hands around her neck and choked her until she became dizzy and thought she was about to pass out.

David and Jake, who both testified in the trial, explained they were in the living room and asleep when they heard Farah and Kirtley arguing in their bedroom. Both testified that when they entered the bedroom Farah and Kirtley shared, they saw Kirtley holding Farah against the wall, choking her with his hands.

David testified that because he was afraid Kirtley would "end up…hurting [Farah] really bad," he grabbed a knife and stabbed Kirtley in the arm. David explained that Farah then pushed Kirtley off of her and onto the bed. David added that Kirtley then cursed and threatened to kill them all. David, Jake, and Farah left the bedroom and entered the living room. From there, David and Jake left the house through the front door after they heard a gun go off in the hall. Police recovered a recording from the front dash-camera of Chip's truck, which Chip had left parked facing the steps near the front stairs of Farah's home. Police also recovered footage from a camera in Chip's truck that shows what

5

occurred from behind. Footage from both cameras was admitted into evidence in the trial.

When David and Jake opened the front door of the house, they are seen in the video running off the porch. Both video recordings have audio, and the recordings capture Kirtley hitting Farah with his hand outside Farah's home.

B. *The third indictment, which alleges that on or about December 20, 2019, and before the fifth anniversary of being released from his confinement on a felony conviction Kirtley intentionally or knowingly possessed a firearm.*

Kirtley argues the jury heard some evidence from which it could have inferred that Kirtley feared David stabbing him again, noting that David never testified "he would not have stabbed [Kirtley] again if he attempted to choke or otherwise assault [Farah] in his presence[.]" That said, the issue Kirtley raises in his appeal is that the trial court didn't instruct the jury on a defense of necessity in the case resulting in his conviction for illegally possessing a firearm; Kirtley did not raise a claim of self-defense to the indictment charging him with illegal possession of a firearm. As we explain below, the evidence before the jury did not show that Kirtley ever admitted possessing a gun.

The first police officer on the scene was Trooper Brit Lopez, a highway patrolman employed by the Texas Department of Public Safety. Trooper Lopez was assigned to patrol the area around Magnolia, Texas, in December 2019. When he arrived, Lopez noticed that Kirtley had "a bunch of blood" on the sleeve of his shirt. According to Trooper Lopez, when he saw Kirtley he placed a tourniquet on Kirtley's right arm, but before doing so, he said, he "made sure" Kirtley didn't have a gun.

Importantly, we find nothing in the evidence before the jury that shows Kirtley ever admitted to having a gun. Instead, the record shows Kirtley pleaded not guilty to the charge, and he didn't testify in his trial. Thus, the question is whether there is something else, such as footage from a body camera worn by the officer who interviewed Kirtley at the scene that shows Kirtley possessed a firearm on or about December 20, 2019, as alleged in the indictment.

During the investigation conducted by the police, Kirtley denied owning a gun. Trooper Lopez's body-cam footage shows that when he approached Kirtley, he asked "Where's the gun at? Be honest with me, you know we're going to find it." While sitting on the ground, Kirtley responds: "What gun?" Then, Trooper Lopez said: "You didn't pull a gun

out?" Kirtley answered: "I don't own a gun." After that, Kirtley gave Trooper Lopez his account about what happened in the home. In the body-cam footage, Kirtley admits hitting Farah when the two of them argued, but he never admits in the recordings admitted into evidence or in any other evidence before the jury that he had a gun.

Jacob Currington, a deputy employed by the Montgomery County Sherriff's office, found Kirtley's pistol after spotting it through a hole in a fence dividing Farah's property from the property next door. When Currington was called by the State, he testified he "did not" interview Kirtley. On cross-examination, Kirtley's attorney asked Deputy Currington: "Now, when you were on the scene, did you ever see Roy Kirtley in possession of a firearm?" Deputy Currington responded that he did not.

Kirtley rested without calling any witnesses. In closing argument, Kirtley's attorney didn't argue that Kirtley possessed a firearm.[4]

---

[4]Kirtley's attorney didn't make an opening statement.

*C. The assault that led to the first indictment, which alleges that Kirtley threatened Julian with a deadly weapon.*

Julian, who also testified in the trial, explained that when he heard the commotion in Farah's and Kirtley's room from his bedroom, he looked out from his bedroom door into the hallway to see what was going on. He noticed Kirtley in the hall. Julian testified that when he stepped into the hall, he saw Kirtley coming toward him with a pistol in his hand. Julian added that when Kirtley approached him, Kirtley said: "[Y]ou want some, you want some[?]" Then, Kirtley fired the pistol, but the bullet struck the floor near Julian's foot. Kirtley ran out of the house through a back door. Then, Julian then ran out of the house and also went into the back yard. According to Julian, Kirtley turned around and shot toward him "two or three more times." According to Julian, he then ran "toward the front yard."

*D. The second indictment, which charges Kirtley with the assaulting Farah by hitting her with his hand.*

After Kirtley fired the pistol in the hallway, David and Jake fled the house through the front door and crossed the street. From there, David called the police. The dash-cam footage from Chip's truck shows what happens at Farah's house in the next approximately nine minutes

outside Farah's house on her front porch and in her front yard. Farah (when in view of the camera) spends part of her time talking on her cellphone, either in her front yard or inside the house. At trial, Farah testified she was talking to Chip on the phone. When Kirtley and Farah are on the front porch and standing near the front door, Kirtley hit Farah in the head with his hand.

Subsequently, Kirtley is seen in the recording standing near Chip's truck with a small bag his hand. Farah walked toward him and told her "give me my money" six times before she snatched the small bag out of his left hand. He responds, hitting Farah on the right side of her head with his left hand. Some of Kirtley's statements in the recording are not audible in the footage taken from Chip's truck, but the recording captured the altercation the two of them had over the bag Kirtley was holding in his hand.

After Kirtley hit Farah in the face, Farah repeatedly said: "Get away, just leave the property." After Kirtley hit Farah, she still has the zip-up bag in her hand. It also doesn't appear that Kirtley made any further effort to recover the bag. Instead, he cursed Farah repeatedly, complaining about her son David. He responds to her demand that he

leave, saying: "You want to take every dollar I got and then leave the property?" To be sure, on direct examination the prosecutor asked Farah whether she remembered why Kirtley "was trying to take your money?" Farah answered: "Because he said it was his."

In his brief, Kirtley agrees that the jury could have found him guilty of assaulting Farah with his hand based on the evidence the jury heard for either the assault on the porch or the assault when he hit her after she snatched the small bag from his left hand. Kirtley also agrees that of these two assaults, only the second is relevant to his defense-of-property claim. That said, Kirtley suggests that because the jury could have convicted him of committing either assault, he had a right to have the jury instructed on his claim that he was justified in using reasonable force to recover his money from Farah after she snatched the zip-up bag from his hand.

As mentioned, Kirtley didn't testify in the trial. Only two of the State's witnesses—Farah and Jake—addressed who the money belonged to that Kirtley and Farah were fighting over during the trial. On direct examination, the prosecutor asked Farah: "Whose money [(referring to the money in the zip-up bag in the recording)] was that?" Farah

11

answered: "It was mine." Farah also described the bag they were fighting over as a "Michael Kors zip-up bag." According to Farah, the zip-up bag was in her purse in the master bedroom when Kirtley took it. Farah testified Kirtley removed the bag from her purse without her permission.

Jake (David's friend) testified the zip-up bag was "her money bag[.]" According to Jake, he knew the bag belonged to Farah because when "she cashed a check, that's the money that she would give us money out of."

The record shows the jury heard testimony that Kirtley admitted hitting Farah at least twice on December 20. First, Kirtley admitted hitting her in the footage the jury viewed that was from Trooper Lopez's body camera. Second, Lopez's attorney admitted Kirtley struck Farah in closing argument. He said: "The video shows [Kirtley] hitting [Farah] after [Farah] steals, what is in dispute, the moneybag."

When the parties rested, Kirtley asked the trial court to instruct the jury on two defenses: (1) his claim that he had a right to protect his property (the money in the zip-up bag) from being taken by Farah; and (2) his claim that despite his status as a felon, it was necessary under the circumstances that he have a firearm because David had stabbed him

12

with a knife. The trial court overruled Kirtley's requests. After deliberating on its verdict, the jury found Kirtley guilty of committing the four felonies, as charged in the indictments.

Kirtley appealed all four convictions, but then challenged only two of the convictions in his brief: (1) the judgment in trial court cause number 21-04-04794-CR, the conviction tied to Kirtley's indictment for striking Farah with his hand;[5] and (2) the judgment in trial court cause number 19-12-17068-CR, the conviction tied to Kirtley's indictment for illegally possessing a firearm.[6]

In his first issue, Kirtley complains that on his conviction for assaulting Farah with his hand, the trial court erred in failing to instruct the jury on his defense of property claim. In his second issue, Kirtley argues that in his conviction for illegally possessing a firearm, he was harmed because the trial court failed to instruct the jury on his necessity defense.

---

[5]*Id.* § 22.01(b)(2)(A).

[6]*Id.* § 46.04(a)(1). Kirtley didn't challenge his convictions under indictments charging him with the two felony-aggravated assaults, the judgment in trial court cause number 19-12-17066-CR (the judgment based on his conduct for shooting at Julian), and the judgment in trial court cause number 19-12-17067-CR (the judgment based on his conduct for choking Farah).

13

Because we conclude that Kirtley's issues lack merit, we will affirm.

## II.    Standard of Review

Unless a defendant pleads guilty, the trial court in a criminal trial must provide the jury with "a written charge distinctly setting forth the law applicable to the case[.]"[7] Under Texas law, the "defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of how the trial court views the credibility of the defense."[8] For that reason, instructing the jury on a "defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true."[9] In determining whether the evidence admitted in a trial raises a defense, we view the evidence in the light most favorable to the defendant's request that the trial court provide the jury with instructions on the claimed defense.[10] When conducting our review, the reviewing court relies on its "judgment,

---

[7]Tex. Code Crim. Proc. Ann. art. 36.14.
[8]*Maciel v. State*, 631 S.W.3d 720, 723 (Tex. Crim. App. 2021) (cleaned up).
[9]*Id.*
[10]*Id.*

14

formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven" in the trial.[11]

Kirtley argues the evidence before the jury required the jury to provide the jury instructions on his defense of necessity and his defense that he it was his money that he trying to recover from Farah. The question is whether there is some evidence raising one or both defenses. If not, we will affirm. If so, we must then determine whether the trial court's error harmed Kirtley after applying the "some harm" standard.[12]

When reviewing a record for "some harm," the harm that results to the defendant from the error must be "actual, rather than merely theoretical."[13] In evaluating for harm, a reviewing court considers these four factors when assessing whether the omission of the proper instructions led to causing the defendant to suffer some harm: "(1) the entire jury charge, (2) the state of the evidence, (3) the jury arguments,

---

[11]*Id.*

[12]*Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003); *see also* Tex. Code Crim. Proc. Ann. art. 36.19.

[13]*Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). (cleaned up).

and (4) if applicable, any other relevant information as revealed by the record as a whole."[14] "Neither party bears the burden to show harm."[15]

## III.   Defense of Property

Under Texas law, a person may be justified in using force to recover their property if there is some evidence admitted during the trial that raises a defense on a protection-of-property defense. Kirtley's claim is that Farah wrongfully took money from him that rightfully belonged to him, and he immediately responded by using reasonable force when he tried to take it back. Under Texas law:

> A person unlawfully disposed of land or tangible, moveable property by another is justified in using force against the other when and to the degree the actor reasonably believes the force is immediately necessary to . . . recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and:
>
> (1) the actor reasonably believes the other had no claim of right when he dispossessed the actor; or
>
> (2) the other accomplished the dispossession by using force, threat, or fraud against the actor.[16]

---

[14]*Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022).
[15]*Id.*
[16]Tex. Penal Code Ann. § 9.41(b).

16

In Kirtley's first issue, he argues the trial court erred in failing to instruct the jury that he had the right to use reasonable force in retrieving what the jury could have reasonably concluded was his money in the zip-up bag from Farah after Farah took it from him without his consent. Kirtley, however, didn't testify in his trial, so he ties his claim of ownership to Farah's testimony that "he said it was his." He also argues that there is evidence that he had more money in the house in a safe, which he didn't take that day. We disagree with Kirtley, however that the jury heard any testimony that the money in the safe belonged to him. To the contrary, the only testimony we find in the record about that money is Farah's, and she testified the money in the safe was money that she "was saving."

That said, while weak, we concede that Farah's testimony amounts to some evidence from which some jurors could have reasonably concluded the money in the zip-up bag was Kirtley's. The footage from Chip's truck didn't record every word of what Kirtley and Farah said to one another that morning, so Farah's admission that Kirtley claimed the money was his is some evidence that it was his money. When trial courts are deciding whether an instruction is required on a defense, they must

submit an issue on the defense if the evidence raises the defense whether that evidence is strong, weak, impeached, or contradicted, and even if the trial court doesn't think the testimony is "worthy of belief."[17]

Kirtley's response to having the zip-up bag taken from him was immediate, as the recording shows he immediately hit Farah when she took the bag. On this record, the evidence raises a fact issue on whether the money was Kirtley's and whether the force he used was reasonable. Consequently, the trial court should have allowed the jury to instruct the jury on the elements of Kirtley's defense-of-property claim. Having found error, we now must determine whether Kirtley suffered some harm. We conclude the answer is no for these five reasons.

First, the evidence that Kirtley believed the money belonged to him was weak, at best. Kirtley argues that even though he didn't testify the money was his, the jury could have inferred that it was because Farah testified that she thought he was trying to take the money from her because he said, "it was his." But the recording from Chip's dash-cam video doesn't show that's what Kirtley said. What he said was: "You want

_____

[17]*Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007); *Johnson v. State*, 271 S.W.3d 359, 362 (Tex. App.—Beaumont 2008, pet. ref'd).

to take every dollar I got and then leave the property[.]" In our opinion, that statement is much more ambiguous about whether Kirtley was making a direct claim about the money in the zip-up bag, or whether the statement was instead just a general observation about how he wouldn't be left with much if he had to leave. Farah may have interpreted the attorney's question as one asking her about her state of mind, why she thought he was claiming it was his money rather than asking her to testify about what he said.

Second, only two witnesses—Farah and Jake—testified about who the money belonged to in the zip-up bag. At trial, Farah, an assistant manager at a gas station, told the jury the zip-up bag was hers, and the money in it came from the money she had worked for. When Jake testified, he told the jury that when Farah cashed checks, she placed the money in the zip-up bag. Jake added that when he or David would then need some money, Farah took money from the zip-up bag and gave it to them. Jake also testified that Kirtley never put any of his money in the zip-up bag. When Kirtley's attorney asked Jake whether Kirtley hit Farah because he "had been stabbed with a deadly weapon and . . . been robbed[,]" Jake answered: "Well, it wasn't his money. So no, sir."

19

Third, the overwhelming evidence at trial shows that when Kirtley hit Farah in the head after she snatches the zip-up bag from him, he isn't trying to recover the bag. After Kirtley hit Farah, he doesn't reach for the bag. When Farah staggers back from Kirtley's blow, she still has the zip-up bag in her hands. After that, Kirtley approached Farah several more times, continued to curse her, and she continued demanding that he leave. In the footage from the recording, Kirtley never demands that Farah turn "his" money over to him. After Farah take the zip-up bag from him, he made no further effort to recover what he claims was his. Kirtley also didn't leave the property but he there until the police arrived. Had the money belonged to Kirtley as he claimed, he fails to explain why he didn't make any further effort to recover the money since his first attempt failed, and he and Farah were still there.

Fourth, the assault Kirtley challenges is the last of four assaults that the evidence shows Kirtley committed that day. The three prior assaults involved one that occurred in the bedroom, where Kirtley choked Farah, one in the hall, where he shot a gun at Julian, and one on the porch where Kirtley hit Farah in the head. Thus, the context of Kirtley's

behavior as it relates to the zip-up bag is that his conduct was about injuring Farah, not his desire to recover money from her that day.

Fifth, Kirtley agrees the evidence shows that when he and Farah were on the porch standing near the door, he hit Farah in the head with his hand. He agrees the evidence in his trial shows the jury could have convicted him of committing the assault under the indictment in trial court cause 21-04-04794-CR based on the evidence tied to the assault on the porch. The record shows the State argued the jury could convict him for the assault on the porch or the assault in the yard. Thus, the evidence in Kirtley's trial supports an independent theory of conviction on which Kirtley's defense-of-property theory doesn't apply.

Having carefully reviewed the entire record, we conclude the trial court's error in omitting defense-of-property instructions from the charge were harmless. On this record, Kirtley claim he was harmed is theoretical, not actual. For that reason, we conclude that Kirtley has not shown he suffered "some harm."[18] We overrule Kirtley's first issue.

---

[18]*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

## IV. Necessity Instruction

In his second issue, Kirtley complains that on his conviction for unlawfully possessing a firearm as a felon, the trial court erred in failing to instruct the jury on his necessity defense because "[s]ufficient evidence and testimony were produced at trial that created a question of whether Appellant reasonably believed his conduct with a firearm was immediately necessary to avoid imminent harm after being stabbed with a knife." Specifically, Kirtley argues "[t]here is a question of fact for the jury as to whether Appellant was justified in possessing a firearm from future assaults by [David] with a knife."

As to the defense of necessity, the Penal Code provides:

Conduct is justified if:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[19]

---

[19]Tex. Penal Code Ann. § 9.22.

"The legislature has not excluded the justification of necessity as a defense to the offense of possession of a firearm by a felon."[20]

"Necessity is a confession-and-avoidance defense requiring the defendant to admit his otherwise illegal conduct."[21] "To be entitled to a defensive instruction for necessity, a defendant must put on evidence that essentially admits to every element of the offense, including the culpable mental state."[22] "In other words, a defendant cannot both invoke necessity and flatly deny the charged conduct."[23]

Kirtley denied owning a gun during the investigation conducted by police, pleaded not guilty to the indictment for illegal possession of a firearm, and our review of the record reflects there was no evidence admitted in his trial that he possessed a gun. At trial, Kirtley's attorney never admitted Kirtley possessed a firearm, waiving opening statement and in closing the attorney never said anything about Kirtley having possessed a gun. On this record, we conclude Kirtley wasn't entitled to invoke a necessity defense. We overrule Kirtley's second issue.

---

[20]*Vasquez v. State*, 830 S.W.2d 948, 950 (Tex. Crim. App. 1992).
[21]*Maciel*, 631 S.W.3d at 723.
[22]*Id.* (cleaned up).
[23]*Id.*

Conclusion

Having overruled Kirtley's issues, we affirm the trial court's judgments in trial court causes 09-21-00346-CR, 09-21-00347-CR, 09-21-00348-CR, and 09-21-00349-CR.

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on June 28, 2023
Opinion Delivered September 13, 2023
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.