PD-0257-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/8/2015 2:50:43 PM
Accepted 4/15/2015 11:59:57 AM
ABEL ACOSTA
CLERK

No. PD-0257-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

GREGORY SHAWN HENLEY,                                                   Appellant

v.

THE STATE OF TEXAS,                                                     Appellee

Appeal from Tarrant County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

FILED IN
COURT OF CRIMINAL APPEALS

April 15, 2015

ABEL ACOSTA, CLERK

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

ORAL ARGUMENT REQUESTED

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Gregory Shawn Henley.

*The case was tried before the Honorable Jamie Cummings, Presiding Judge of County Criminal Court No. 5 of Tarrant County, Texas.

*Counsel for Appellant at trial was Cody Lee Cofer and Lauren R. Crisera, 111 N. Houston, Fort Worth, Texas 76102.

*Counsel for Appellant on appeal was William S. Harris, 307 West Seventh Street, Suite 1905, Fort Worth, Texas 76102.

*Counsel for the State at trial was Kris B. Krishna, former Assistant Criminal District Attorney, and Christopher B. McGregor, Assistant Criminal District Attorney, 401 W. Belknap St., Fort Worth, Texas 76196.

*Counsel for the State on appeal was Debra Windsor, Assistant Criminal District Attorney, 401 W. Belknap St., Fort Worth, Texas 76196.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Is a person justified in using force against another to prevent an absent third party from possibly using unlawful force in the future?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

APPENDIX  (Opinion of the Court of Appeals)

# INDEX OF AUTHORITIES

**Cases**

*Boget v. State*, 74 S.W.3d 23 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . 6

*Brazelton v. State*, 947 S.W.2d 644 (Tex. App.–Fort Worth 1997, no pet.) . . . . . . 8

*Dewalt v. State*, 307 S.W.3d 437 (Tex. App.–Austin 2010, pet. ref'd). . . . . . . . . . 8

*Dobbs v. State*, 434 S.W.3d 166 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . . . 8

*Henley v. State*, __S.W.3d__, 2014 Tex. App. LEXIS 13562
 (Tex. App.–Fort Worth 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hughes v. State*, 719 S.W.2d 560 (Tex. Crim. App. 1986) (en banc). . . . . . . . . . . 3

*Isassi v. State*, 330 S.W.3d 633 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . 10

*Macias v. State*, 13-13-00319-CR, 2015 Tex. App. LEXIS 2319
 (Tex. App.–Corpus Christi Mar. 12, 2015) (mot. for r'hng filed). . . . . . . 1, 7

*Murkledove v. State*, 437 S.W.3d 17 (Tex. App.–Fort Worth 2014, pet. dism'd). . 8

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes and Rules**

TEX. PENAL CODE § 1.07(a)(48) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TEX. PENAL CODE § 9.31(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

TEX. PENAL CODE § 9.31(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TEX. PENAL CODE § 9.32(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. PENAL CODE § 9.33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TEX. R. EVID. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

No. PD-0257-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

GREGORY SHAWN HENLEY,                                          Appellant

v.

THE STATE OF TEXAS,                                          Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

### STATEMENT REGARDING ORAL ARGUMENT

The State requests oral argument. This case tests the limits of entitlement to self-defense.[1] The availability of defenses is critical, but it must be weighed against the legitimate interest of the Legislature in defining them and the State's interest in

---

[1] *See also Macias v. State*, 13-13-00319-CR, 2015 Tex. App. LEXIS 2319 at \*18-20 (Tex. App.–Corpus Christi Mar. 12, 2015) (mot. for r'hng filed), which held that a defendant is entitled to self-defense or defense of a third person in a murder prosecution for killing someone neither he nor the third person knew was there.

1

fair trials free from needless confusion of the issues. Conversation will assist the Court in defining the contours of self-defense.

## STATEMENT OF THE CASE

Appellant was convicted of assaulting his ex-wife when she picked up their sons for scheduled visitation. The court of appeals held that the trial court reversibly erred by refusing to admit testimony that would have supported appellant's claim that he was justified in assaulting his ex-wife in order to prevent her then-fiancé and his ex-stepson, neither of whom were present, from abusing his children.

## STATEMENT OF PROCEDURAL HISTORY

On December 18, 2014, the court of appeals reversed appellant's conviction and remanded for a new trial in a published opinion.[2] The State timely filed motions for rehearing and rehearing *en banc* on January 20, 2015. Both were overruled on February 5, 2015. The State was granted an extension and its petition for discretionary review is due on or before April 8, 2015.

## GROUND FOR REVIEW

**Is a person justified in using force against another to prevent an absent third party from possibly using unlawful force in the future?**

---

[2] *Henley v. State*, __S.W.3d__, 2014 Tex. App. LEXIS 13562 (Tex. App.–Fort Worth 2014).

## ARGUMENT AND AUTHORITIES

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."[3] "A person is justified in using force. . . against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 . . . in using force . . . to protect himself against the unlawful force . . . he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person."[4] In essence, the Legislature places the accused "in the shoes of the third person."[5] Would an actor be justified in assaulting someone who was using no unlawful force against him but whose actions might create an opportunity for someone else to use unlawful force against him in the future?

Facts

Appellant and his former wife, Brandy, were in a custody dispute over their two sons. Brandy arrived to pick them up for her scheduled visitation, which is

---

[3] TEX. PENAL CODE § 9.31(a).

[4] TEX. PENAL CODE § 9.33.

[5] *Hughes v. State*, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986) (*en banc*).

3

supervised by her mother at her mother's house.[6] Appellant initially refused to release them and wanted to talk, but put them in Brandy's car when she called the police.[7] After she was told by the dispatcher to wait for police to arrive, she ended the call.[8] Appellant then ripped off her car door handle.[9] When Brandy opened the door to pick it up, appellant dragged her out of the car by her hair.[10] Once on the ground, appellant got on top of her with his knees on her shoulders, punched her face with both fists, and banged her head against the concrete.[11]

The jury heard that Brandy's visitation had not always been supervised, and that appellant was agitated that day and wanted to speak with Brandy instead of releasing the children to her.[12] Appellant wanted them to know more. Outside the presence of the jury, Brandy acknowledged that visitation had to be supervised because she would not leave Douglas, her then-fiancé, whom one of her sons accused of choking him in August of 2011.[13] Brandy still lived with Douglas, and later

---

[6]   5 RR 80.

[7]   5 RR 64, 81.

[8]   5 RR 65.

[9]   5 RR 65.

[10]   5 RR 65-67.

[11]   5 RR 67-68.

[12]   5 RR 81-84.

[13]   5 RR 86, 90. CPS found the accusation not to be true. 5 RR 90. The trial offense was alleged to have occurred March 3, 2012, at least six months after the alleged choking incident.

4

married him.[14] Brandy acknowledged that Douglas's ex-stepson sexually assaulted her sons while in her care and that there was a court order prohibiting contact between him and her sons.[15] Appellant argued this testimony was admissible for two reasons. First, "clearly, my client is reacting to the abuse that had occurred before that was not discovered by Brandy while she is in the home with this kid. I think that creates a legitimate concern for the safety of these kids . . . ."[16] He added, "[Brandy's mother's] statement of my client's character for being someone that becomes irate leaves the jury with a misunderstanding and incomplete impression about my client's state of mind and the reason that he may become irate, which is that his children have been abused while in [Brandy's] care."[17] The trial court denied his requests.[18]

According to the court of appeals, both the alleged errors and resulting harm "overlap."[19] "The trial court erred by denying Appellant the right to confront and cross-examine Brandy and her mother to further show his state of mind and further

---

[14]  5 RR 86.

[15]  5 RR 87, 89.

[16]  5 RR 99.

[17]  5 RR 102.

[18]  5 RR 102, 103. Appellant testified outside the presence of the jury "[f]or the limited purpose of allowing the [trial court] to reconsider its ruling . . . ." 5 RR 104-113; slip op. at 4-9. Because the trial court did not change its ruling, appellant did not testify. 5 RR 121-22, 124.

[19]  Slip op. at 18.

develop his justification defense."[20]  Regarding harm, "Justifying his conduct based on the defense of a third party was Appellant's entire defense[,]" and he was prevented from presenting evidence of it "[a]t every turn."[21]  The court of appeals' analysis is thus premised entirely on appellant's entitlement to an instruction on defense of a third person.  If he was not entitled, then the trial court acted within its discretion to exclude largely irrelevant, unfairly prejudicial testimony.[22]

Analysis

Appellant's entitlement depends on the definitions of "another," "the other," "immediately necessary," and "unlawful force," none of which are defined by statute or by this Court.[23]

*"The other"*

As one court of appeals has recently stated, the language of the self-defense provisions "logically implies that 'the other' who uses or attempts to use unlawful force as indicated in subsection (a) of section 9.31 is 'the person against whom the

---

[20]    Slip op. at 18.

[21]    Slip op. at 21.

[22]    *See* TEX. R. EVID. 403 (allowing the exclusion even of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues).

[23]    This Court has addressed "what it means to direct force 'against' another[,]" but did not define "another" in doing so.  *Boget v. State*, 74 S.W.3d 23, 27 (Tex. Crim. App. 2002).

force was used.'"[24]  This makes sense, as the presumption of reasonableness of the actor's belief is based, in part, on the actor's knowledge or reason to believe "that the person against whom" the force or deadly force was used was doing one or more enumerated acts.[25]  In this case, appellant believed that the unlawful force from which it was immediately necessary to protect his sons came from Douglas and his ex-stepson.[26]  And while he agreed that "being in [Brandy's] care was a danger to them," and said Brandy was dismissive of his concerns,[27] he alleged no conduct on her part directed at the boys.  Yet Brandy was the one assaulted, not Douglas or his ex-stepson; "another" and "the other" do not match.  The plain language of section 9.31 logically prohibits appellant's claimed justification defense.

*"Immediately necessary"*

No force against Douglas and his ex-stepson was "immediately necessary" because there were no allegations of present, or even recent, misconduct by them. They were not even there.  Cases dealing with necessity are helpful.  "[E]ven a defendant's sincere belief that his or her conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate

---

[24]  *Macias v. State*, 13-13-00319-CR, 2015 Tex. App. LEXIS 2319 at *18 (Tex. App.–Corpus Christi Mar. 12, 2015) (mot. for r'hng filed) (not designated for publication).

[25]  TEX. PENAL CODE §§ 9.31(a)(1), 9.32(b)(1).

[26]  5 RR 108-09.

[27]  5 RR 110-12.

7

a complete absence of 'immediate necessity' or 'imminent harm' as those concepts are defined in the law."[28]  This language has been approved by this court of appeals but ignored in this case.[29]  Instead of addressing the obvious problems with the speculative threat posed by absent parties, the court of appeals took a different tack: it held that the perceived danger lay in Brandy driving away, which was imminent.[30]

*"Unlawful force"*

The act of departing is not a use of force as that term has been defined by this Court.[31]  It certainly was not directed against her sons.  In fact, the only evidence regarding the children at the time of the assault is that, "They were screaming, telling [appellant] to stop, running around him hitting [Brandy]."[32]  Even if driving away could be considered "force," there was nothing "criminal or tortious" about it; she was attempting to pick up her children on her scheduled day with her mother, who is

---

[28]  *Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.–Austin 2010, pet. ref'd).

[29]  *Murkledove v. State*, 437 S.W.3d 17, 25 (Tex. App.–Fort Worth 2014, pet. dism'd) (citing *Dewalt*); *Brazelton v. State*, 947 S.W.2d 644, 648-49 (Tex. App.–Fort Worth 1997, no pet.) ("A defendant's belief that conduct was immediately necessary to avoid imminent harm may be deemed unreasonable as a matter of law, however, if undisputed facts demonstrate a complete absence of evidence of immediate necessity or imminent harm.").

[30]  Slip op. at 16; *see also* Concurring op. at 4 ("The situation—as well as the danger—was ongoing.  The boys were sitting in Brandy's vehicle, and she was refusing to listen to Appellant's concerns and was about to drive away with them.").

[31]  *See Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014) (adopting the meaning "violence, compulsion, or constraint exerted upon or against a person or thing," and "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm or death") (citations omitted).

[32]  5 RR 69.

8

a court-ordered supervisor for the visitation.[33]  Again, there was no testimony that appellant feared Brandy was actually doing anything to her sons.

Conclusion

A defendant is not entitled to a defense simply because he testifies to that belief, even if his attorney relies on entitlement in opening statements.[34]  There are certainly situations in which a defendant's claims are wholly unworthy of belief but the issue remains one for the jury.  This is not such a case.  Appellant assaulted his ex-wife because she was about to leave with the children he placed in her car moments before,[35] on the basis that her leaving might create a future opportunity for persons not present to harm them.  This is not weak, contradicted, or impeached relevant testimony that is deserving of evaluation by a jury.  Rather, it presents a theory that ignores the plain language of the statute by twisting the meaning of "another," "other," "immediately necessary," and "unlawful force" beyond all recognition.  Appellant may have had an explanation, but he had no statutory justification.  He was not entitled to defense of a third person as a matter of law.

---

[33]  *See* TEX. PENAL CODE § 1.07(a)(48) ("'Unlawful' means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege.").

[34]  *See* slip op. at 14-15.

[35]  It should be noted that his act of placing their sons in Brandy's care and then stepping into their shoes to assault her to prevent her from leaving with them creates a bizarre provocation situation that would have been extremely difficult to explain to the jury.  *See* TEX. PENAL CODE § 9.31(b)(4).

As a result, the trial court did not abuse its discretion in denying further cross-examination. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant."[36] The jury was aware that there was a custody dispute and could infer that Brandy had done something to warrant supervised visitation. This was sufficient for whatever legitimate purpose it served. The excluded testimony was relevant, at best, to punishment; its only value in the guilt phase was to turn jurors against the victim based on her parenting instead of focusing on the evidence regarding the offense. "Although jurors have the raw power to return a verdict that flies in the face of the facts and the law, they do not have a legal right to do so."[37] "Jury nullification is not authorized by law,"[38] and a trial court should not be required to enable it by admitting testimony to support inapplicable defenses.

---

[36] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

[37] *Isassi v. State*, 330 S.W.3d 633, 640 (Tex. Crim. App. 2010).

[38] *Id*.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, and that the decision of the Court of Appeals be reversed.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

11

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 3,049 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 8th day of April, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Debra Windsor
Assistant Criminal District Attorney
401 W. Belknap St.
Fort Worth, Texas 76196
Dwindsor@tarrantcountytx.gov

William S. Harris
307 West Seventh Street, Suite 1905
Fort Worth, Texas 76102
wmsharris.law@sbcglobal.net

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

**APPENDIX**



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00178-CR

GREGORY SHAWN HENLEY                                           APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY
### TRIAL COURT NO. 1277030

----------

## OPINION

----------

A jury convicted Appellant Gregory Shawn Henley of assault causing bodily injury to a family member, his former wife Brandy. The trial court sentenced him to 200 days' confinement in the Tarrant County Jail. In two issues, Appellant argues that (1) the trial court abused its discretion by excluding evidence showing that his conduct was justified as an act in defense of a third party and (2) the trial court improperly limited his right to cross-examine and

confront the witnesses against him by excluding extrinsic proof of Appellant's statements to the complainant and her mother. Because we hold that the trial court reversibly erred by preventing Appellant from presenting his defense and by improperly limiting his right to confront and cross-examine the witnesses against him, we reverse the trial court's judgment and remand this cause to the trial court.

**Summary of Facts**

In 2012, Appellant and Brandy were involved in a custody case regarding their two sons, J.H. and S.H. The two sons lived with Appellant. The family court ordered that Brandy's visits with the children be supervised and that her then-fiancé (now husband) Douglas have no contact with the two sons. These orders resulted from allegations that in 2011, the two boys had been sexually abused by Douglas's stepson, A.G. Brandy's mother was designated as someone who could supervise Brandy's visits with the children.

On March 3, 2012, Brandy and her mother drove to Appellant's home to pick up the two children for Brandy's visit. Appellant told Brandy that he wanted to talk to her, but she refused to speak to him other than to tell him to bring the children out to the car. Appellant did not initially bring the children to the car, but after Brandy dialed 9-1-1, he brought the two boys and put them in her car. Brandy told the 9-1-1 operator that she wanted to make a complaint, and the operator told her to stay until a police officer arrived.

2

After Brandy continued to refuse to speak to him, Appellant grabbed the door handle of the driver's side door and pulled on it, breaking it. Brandy opened the door to pick up the door handle, and Appellant pulled her from the car by her hair. Appellant dragged her to the ground, held her down with his knees, punched her in the face, and banged her head on the ground. Appellant then got up and walked to his driveway, made a phone call on his cell phone, and drove away in his vehicle. Brandy called 9-1-1 again to report the incident.

At trial, Appellant sought to introduce evidence about his motivation for his actions. The trial court allowed him to elicit testimony from Brandy outside the jury's presence. Brandy acknowledged in questioning by Appellant's counsel that the children had been sexually abused by Douglas's stepson, A.G., that one of her sons had made an allegation that Douglas had choked them, and that she had lied to the family court about the fact that she was still living with Douglas.

The State objected that allegations of acts that took place in August 2011 were too remote in time to be considered relevant to Appellant's acts on March 3, 2012. It also argued that, to the extent that Appellant wanted to introduce testimony about statements that one of the sons had made in counseling the week before March 3, 2012, those statements were also too remote. The State argued that for defense of a third person, "there has to be the immediate and necessary intervention," and "[o]ne week prior is not immediate." The trial court ruled that based on the evidence it had heard to that point, it was "not going to allow [Appellant] to go into that."

3

Defense counsel then argued that the testimony of Brandy's mother that Appellant "becomes irate and that is the reason that they didn't want to engage with him" left the jury "with a misunderstanding and incomplete impression about [his] state of mind and the reason that he may become irate, which is that his children have been abused while in her care." Defense counsel argued that he "should be able to clear that up by going into the reason [that Appellant] has been irate in the past." The trial court excluded the evidence.

The trial court allowed Appellant to testify outside the presence of the jury for purposes of making a bill and allowing the trial court to hear evidence to reconsider its ruling:

Q. Now, you said that the conditions—or explain to the Court what it is that happened to the boys that gave you such concern.

A. The week prior to her showing up to pick up the boys, we were in counseling, and I had S.H.[1] on my arm because he wanted me in the counseling with him to go through everything. And throughout the—S.H. coming out—S.H. was explaining how A.G. would make him and his brother sleep with each other in front of him and—

Q. Was that new information?

A. That was new at that time.

Q. And how—in relation to March 3rd, when did that conversation happen?

---

[1]Throughout the quoted passages in this opinion, the children's names have been replaced with initials.

A. I'm not sure if it was the Thursday before or the Thursday before. It was one of the Thursdays before. It was the first time I had seen her since the allegation. More allegations had come out.

Q. And did S.H. say anything that gave you concerns about whether Brandy knew about the allegation?

A. S.H. said that his brother had told his mom.

THE COURT: I'm sorry. What?

A. He had—S.H. said that his brother had told his mom, which stayed in line with what J.H. had said all along.

Q. What do you mean what J.H.—what had J.H. said all along?

A. Ever since the allegations were first made, J.H. has always said that "I told my mommy about what A.G. was doing and that she told me that her and Douglas would take care of it."

Which I don't know if you know ADD kids, but to continually hold the same story for months and months on end is not—not a normal situation.

Q. And so that's what J.H. has maintained the entire time; is that right?

A. Yes.

Q. But in this counseling session was the first time S.H. had told you that his mother knew about it?

A. Yes.

Q. And so her picking the children up this next time was the first time she was going to take possession of the children after S.H. had corroborated what you had said?

A. Yes, sir.

Q. Did you also have any concerns about—and, of course, when we're talking about that, we're talking about the abuse that A.G. perpetrated; is that right?

A. Yes, sir.

5

Q.   Did you have any concerns about whether Douglas abused your boys?

A.   Yes, sir.

Q.   Explain to the Court your concerns about that.

A.   The end of July, right before Brandy went on—right before her summer was over, I was picking up the boys every Thursday and spending Thursday with them, and on the way home—because throughout the whole relationship of Brandy and Douglas, I always got weird stories.  So I always checked with my boys to make sure there wasn't anything strange going on.

   And S.H. said that he was being choked by Douglas.  J.H. corroborated and said, yeah, that's happening.

   And I kind of got really upset and I held off.  We drove a little bit longer, and then I talked to them again, and they were like, yeah.  And then I was upset.  I called their mother to talk to her about it, and she denied it like everything else.

   Then the next morning, after everything was a little bit calmer, I was calmer, I started talking to S.H.  S.H. told me—I was like:  Show me exactly what choking is, because I didn't want him to be confusing it with anything else.

   And the choking went from—he put his hand on my throat, and that's when I knew what he was talking about.

Q.   S.H. put his hand on your throat?

A.   Yes.

Q.   Now, when you called Brandy about this, was she dismissive?  You said she didn't believe—

A.   Yeah, she said it didn't happen.

6

Q. And was that the same attitude she's had about the abuse?

A. Pretty much, yes.

Q. And—kind of all of that experience you have had with Brandy, Douglas, and A.G., did that contribute to your motivation on March 3rd?

A. I believe so, yes.

Q. And did you have a conversation with Brandy on March 3rd?

A. Yes.

Q. And when she came to pick up the boys, did you talk to her about anything?

A. Yes.

Q. What did you talk to her about, or what did you try to talk to her about?

A. I tried to talk to her about what was going on with S.H.

Q. What do you mean what was going on with S.H.?

A. What he was coming—what he was coming out with in counseling, about having to be forced to have sex with his brother.

Q. So you tried to tell her what he said in counseling whenever she came to pick them up?

A. Yes.

Q. And how did she respond to that?

A. Just dismissed it.

Q. And did you just tell her once, and she said, I don't want to talk about it, or did you try to talk to her?

A. I kept trying to talk to her. And then that's when she went and said—asked me for the boys, and I said: No, you're not

7

getting the boys. And that's when she called the police the first time.

Q. And then did you go get the boys at that point?

A. I went to the door and hollered at them to come out.

Q. After the boys were in the car, did you continue to try to talk to Brandy and her mother, Wendy?

A. Yeah. I started pleading with them, and I went over the whole J.H. knows, S.H. knows, all the ordeal with how it all turned out, how this wasn't a one-time deal, that S.H. had said it happened in the middle of the day while you were watching TV, how can you do this, how can you continue on this path.

Q. And Wendy, that was there, was she responsive to what you were telling?

A. No. She just totally ignored it like it wasn't anything.

Q. But she was the person that was supposed to be supervising the visits?

A. Yes.

Q. And so did that contribute to your belief that they were going to put your boys in a dangerous situation?

A. Yes.

Q. Do you believe that your children being in their mother's care was a danger to them?

A. Yes.

. . . .

Q. And I think you kind of said this in the course of one of the answers, but I want to be clear.

Was—the abuse that the boys reported to you, was it one time, or was it ongoing?

A. That I heard about the abuse?

8

Q. Yes, what the boys reported to you.

A. It was a slow process through counseling. And I never talked to them outside of the counseling, because that's what our court order was, but the boys always wanted me to go in to counseling with them.

Q. What I'm asking is, as far as you know, did the abuse occur—the sexual abuse occur one time, or did it occur multiple times?

A. It occurred multiple times.

Q. And all of those times during—while they were in Brandy's care?

A. Yes.

Q. And your actions on March 3rd were to defend your boys from what you perceived as an imminent threat to the boys?

A. Yes.

In his testimony outside the jury's presence, Appellant stated that when Brandy came to pick up the children on March 3, he believed that she was going to violate the family court's order. He stated that in counseling the week before, S.H. said that J.H. had told Brandy about the sexual abuse during the time period it was happening, corroborating statements that J.H. had previously made. Appellant said that the counseling session was the first time that S.H. had said that his mother had known about the abuse, and March 3 was the first time that Appellant had seen her since that counseling session. Appellant stated that J.H. also corroborated his brother's statements that Douglas had choked them. When Appellant called Brandy to ask her about the boys' allegations, she denied them.

9

Appellant stated that on March 3, he tried to talk to Brandy about S.H.'s statements, but she refused. Neither Brandy nor her mother would talk to him about it, and he believed that his children would be in danger while in Brandy's care.

At the conclusion of Appellant's testimony outside the jury's presence, Appellant's counsel argued that the evidence that

- the "abuse was ongoing,"

- Appellant learned from S.H. for the first time the week before March 3 that Brandy knew about the abuse,

- Brandy admitted that she lied to the family court, and

- she and her mother refused to talk to Appellant about S.H.'s statements

all "go[] to the reasonableness of [Appellant] and the actions that he took to keep her from taking th[e] children away."

The State argued that the information had been learned in counseling the week before and that "if it was a week prior, . . . there's no immediacy there." The trial court declined to change its ruling that the evidence did not raise the issue of defense of a third party.

The defense also argued that the evidence was admissible to show Appellant's then existing state of mind:

> And the statement of my client's character for being someone that becomes irate leaves the jury with a misunderstanding and incomplete impression about my client's state of mind and the reason that he may become irate, which is that his children have been abused while in her care.

10

And I believe that Ms. Kennedy's statement elicited by the Government's direct examination has left the jurors with a misunderstanding, and I should be able to clear that up by going into the reason he has been irate in the past.

After further discussion, defense counsel re-urged his request to present the evidence before the jury:

Also, I would reurge my bill with regard to [Appellant's] testimony and the above aforementioned that . . . limiting his right to elicit complete testimony before the jurors violates his due process and due course of law rights under the Texas Constitution, Article 1, Section 19; Texas Code of Criminal Procedure 1.04; and U.S. Constitution, Fifth Amendment, Fourteenth Amendment.

The trial court denied this request to show Appellant's then-existing state of mind and to correct any misleading characterization of Appellant's state of mind. The trial court had also refused to allow Appellant to disclose the reason Brandy's access to the children was limited to supervised visitation.

Appellant did not testify before the jury.

The prosecutor argued in the State's closing argument, "What excuse? Did you hear any? Of course not, because there is no excuse."

**Analysis**

Both of Appellant's issues complain of the exclusion of evidence. We review a trial court's decision to exclude evidence for an abuse of discretion.[2] A

---

[2]*Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

trial court does not abuse its discretion as long as the decision to exclude the evidence is within the zone of reasonable disagreement.[3]

The abuse of discretion standard, however, is viewed in light of and subject to constitutional protections. The Supreme Court of the United States reminds us that while states "have broad latitude under the Constitution to establish rules excluding evidence from criminal trial," "[t]his latitude . . . has limits. . . . [T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."[4] Further, "an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence."[5] Thus, a trial judge whose evidentiary ruling undermines or disregards a constitutional protection abuses his discretion; such a ruling cannot be within the zone of reasonable disagreement.[6]

---

[3]*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

[4]*Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) (citations and internal quotation marks omitted).

[5]*Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146–47 (1986) (citations and internal quotation marks omitted).

[6]*See Holmes*, 547 U.S. at 324, 126 S. Ct. at 1731; *Crane*, 476 U.S. at 689–91, 106 S. Ct. at 2146–47; *State v. Ballard*, 987 S.W.2d 889, 893 (Tex. Crim. App. 1999) ("Misapplication of the law to the facts of a particular case is a per se abuse of discretion.").

**Defense of a Third Party**

In his first issue, Appellant contends that the trial court reversibly erred by refusing to allow him to introduce evidence of why he felt his attack on Brandy was justified as an act in defense of a third party. Appellant correctly argues that the elements of that defense are that (1) under the circumstances as the actor reasonably believed them to be, (2) the actor would be justified in using force under section 9.31 of the penal code to protect himself, and (3) the actor reasonably believes that his intervention is immediately necessary to protect the third person.[7] Defense of a third person is a confession and avoidance defense.[8] The defendant must admit the elements of the offense and then seek to justify his actions.[9] The defendant's testimony alone may be sufficient to raise a defensive theory requiring an instruction in the charge.[10] The defendant must admit to the conduct—act and culpable mental state—of the charged offense to be entitled to the instruction.[11] The self-defense and defense-of-third-person

---

[7]Tex. Penal Code Ann. § 9.33 (West 2011); *see id.* § 9.31.

[8]*Campos v State*, No. 13-11-00705-CR, 2014 WL 895515, at *9 (Tex. App.—Corpus Christi Mar. 6, 2014, pet. ref'd) (mem. op., not designated for publication) (citing *Cornet v. State*, 417 S.W.3d 446, 451–52 (Tex. Crim. App. 2013), and *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008)).

[9]*Id.*

[10]*Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997).

statutes are not limited to particular crimes; they simply provide that a person's use of force or deadly force is justified if certain circumstances are met.[12]

The Texas Court of Criminal Appeals instructs us that "the focus of the defense-of-third-persons defense is upon what the actor reasonably believes concerning the situation of the third person."[13] If a defendant reasonably believed that the person he sought to protect was legitimately defending himself, then the defendant would be entitled to the presumption that his belief that the force was immediately necessary was reasonable,[14] even if his belief was actually incorrect.[15] Thus, if the evidence is admitted, the defense must be submitted to the jury. The trial court does not decide that the defense will not be successful when determining whether to admit the evidence of the defense. It is the jury alone who determines whether a defendant has successfully proved his defense.

Here, Appellant presented his theory of defense of a third party in voir dire and admitted to the elements of the offense of assault of a family member

---

[11]*Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010) ("The confession and avoidance doctrine applies to the necessity defense.").

[12]*Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011).

[13]*Id.* at 8.

[14]Tex. Penal Code Ann. § 9.31.

[15]*Morales*, 357 S.W.3d at 8.

14

through his opening statement but was not allowed to present his justification defense. At that point, he was stuck in an impossible situation. He upheld the first portion of his burden by admitting to the elements of the crime alleged but was precluded from offering the evidence to show justification. Instead, the jury heard the evidence that Appellant, after assaulting the complainant for no apparent reason, got into his car and left the scene, leaving the children with her.

Appellant was entitled to present his defense.

In *Fielder v. State*, Fielder attempted to present her battered-spouse defense.[16] Just as defense of a third party is central to Appellant's defense here, the battered-spouse defense was the essence of Fielder's defense.[17] The Texas Court of Criminal Appeals reversed Fielder's conviction, holding that the trial court reversibly erred by refusing to allow her to offer the evidence.[18]

In the case before us, the State argued that the evidence of the relationship between Appellant and his former wife was too remote to support a finding of sudden passion or the immediate need to defend their sons. The State here argued that because Appellant had learned of the sexual abuse the previous year and because he had learned of additional abuse the week before, there was no immediacy. He could only have acted in defense of his children a

---

[16]756 S.W.2d 309, 317 (Tex. Crim. App. 1988).

[17]*Id.* at 319.

[18]*Id.* at 320–21.

week before when the outcry occurred. The State's argument, however, is flawed. An immediate response of sudden passion arising from adequate cause is the test of what used to be voluntary manslaughter and is now a punishment issue in a murder prosecution.[19] Sudden passion is not an element of self-defense or defense of another. The need for immediate action in defense of another does not rest on sudden passion but, rather, on the need to act immediately to protect the other person.

Appellant attempted to talk to Brandy about the children's safety. Brandy and her mother refused to discuss his concerns. The danger that Appellant perceived was not the danger of injury from the counseling that the children had participated in the previous week. The danger that Appellant perceived lay in the children's leaving his home with Brandy. That perceived danger was immediate.

Appellant attempted to argue that the danger lay in allowing the children to go with his former wife because of the history of sexual and physical abuse. Appellant made a proper showing of the evidence that he sought to present to the jury. It was both admissible and probative. We therefore hold that the trial court abused its discretion by excluding the evidence and erred by refusing to allow Appellant to present his defense.

---

[19] *Wooten v. State*, 400 S.W.3d 601, 604–05 (Tex. Crim. App. 2013).

**Denial of Right of Confrontation**

Appellant contends that the State was allowed to present him as an irrationally angry man. As part of his attempt to present his defense of a third person, Appellant tried to explain to the jury the relationship among the parties, his concerns for his children, his state of mind, and the reasons for his actions. He was not permitted to do so. In his second issue, Appellant argues that the trial court improperly limited his right to cross-examine and confront the witnesses against him by not allowing him to question Brandy and her mother about the new allegations that had emerged during the children's counseling concerning abuse during Brandy's times of possession. We agree and hold that the trial court so erred.

Appellant correctly argues that denial of the right of confrontation and cross-examination is an error of constitutional magnitude.[20] And the trial court's error here was exacerbated by the State's jury argument. The Texas Court of Criminal Appeals has recognized that occasionally

> erroneous exclusion of a defendant's evidence of . . . state of mind at the time of the [conduct] amount[s] to constitutional error because the evidence was critical to [the] defense:
>
> > [T]he trial court's exclusion of [the defendant's self-defense evidence] was not mere evidentiary error. It was of constitutional dimension. The ruling went to the heart of the defense. Petitioner's sole defense was that she killed her husband in an honest belief that she

---

[20] *See Davis v. Alaska*, 415 U.S. 308, 320, 94 S. Ct. 1105, 1112 (1974).

17

needed to do so to save her life. The success of the defense depended almost entirely on the jury's believing petitioner's testimony about her state of mind at the time of the shooting. . . . The trial court precluded petitioner from testifying fully about her state of mind and from presenting evidence that would have corroborated her testimony. Because this evidence was critical to her ability to defend against the charge, we hold that the exclusion of this evidence violated petitioner's clearly established constitutional right to due process of law— the right to present a valid defense as established by the Supreme Court in *Chambers* [*v. Mississippi*] and *Washington* [*v. Texas*].[21]

Similarly, Appellant in the case now before this court had received information that, contrary to prior representations, Brandy knew about the sexual and physical abuse but neither stopped it nor told the truth when asked about it by the family court judge. The trial court abused its discretion by excluding the evidence and in doing so, erred by denying Appellant the right to confront and cross-examine Brandy and her mother to further show his state of mind and further develop his justification defense.

**Harm**

Just as the trial court's errors of excluding Appellant's testimony justifying his actions and preventing him from cross-examining Brandy and her mother about the bases for his actions and his state of mind overlap, so does the harm caused by both errors. The right to present a complete defense is rooted in the constitutional right to due process under both the Fifth and Fourteenth

---

[21] *Potier v. State*, 68 S.W.3d 657, 663–64 (Tex. Crim. App. 2002) (quoting *DePetris v. Kuykendall*, 239 F.3d 1057, 1062–63 (9th Cir. 2001)).

Amendments to the United States Constitution; the right to due course of law under article one, section nineteen of the Texas Constitution; the Sixth Amendment right to confront and cross-examine witnesses; and the same right under article one, section ten of the Texas Constitution.[22] The Texas Court of Criminal Appeals has reminded us of the importance of a defendant's being allowed to present a complete defense, stating,

> In *Holmes v. South Carolina*, the Supreme Court stated, "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" In the case before us, the trial court's ruling disallowing cross-examination of the State's expert witness violated the defendant's fundamental rights to a fair trial. The Supreme Court said in *Pointer v. Texas*:
>
> > There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.
>
> Because the denial of the right to present a defense is a violation of due process and results in constitutional error, we now turn to the harm analysis.[23]

---

[22]U.S. Const. amends. V, VI, XIV; Tex. Const. art. I, §§ 10, 19.

[23]*Holmes v. State*, 323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh'g) (citations omitted).

19

The deprivation of the meaningful right to present a defense is constitutional error.[24] We therefore apply rule 44.2(a).[25] The question is whether both errors were harmless beyond a reasonable doubt.[26] In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction.[27]

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence.[28] We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt (that particular) error did not contribute to the conviction or punishment,'" and if applicable, we may consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a

---

[24]*Holmes*, 547 U.S. at 324, 126 S. Ct. at 1731; *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967); *Holmes*, 323 S.W.3d at 173–74.

[25]Tex. R. App. P. 44.2(a).

[26]*See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

[27]*Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[28]*Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001).

juror would probably place on the error.[29]  This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution."[30]

In the case now before this court, Appellant attempted to justify his conduct to the jury.  He tried to explain to the jury the source of his anger and his concern for his children.  His claim that he was acting to protect his children was his defense.  Moreover, the State made Appellant's state of mind an issue in the case, creating the impression that his anger was irrational and baseless.  The jury heard the evidence that Appellant, after assaulting the complainant, got into his car and left the scene, leaving the children with her.

Justifying his conduct based on the defense of a third party was Appellant's entire defense.  At every turn, he was barred from presenting evidence of his defense to the jury.

After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we cannot say that the trial court's errors did not

---

[29]*Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)).

[30]*Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22 (citation and internal quotation marks omitted).

contribute to Appellant's conviction or punishment.[31]  We therefore sustain Appellant's two issues.

**Conclusion**

Having sustained Appellant's two issues, we reverse the trial court's judgment and remand this case to the trial court.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

GARDNER, J., filed a concurring opinion.

PUBLISH

DELIVERED:  December 18, 2014

---

[31] *See* Tex. R. App. P. 44.2(a).

22



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00178-CR

---

GREGORY SHAWN HENLEY                                                        APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

----------

FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY
TRIAL COURT NO. 1277030

----------

## CONCURRING OPINION

----------

I cannot agree that the standard of review of the trial court's refusal to admit the evidence supporting Appellant's justification defense is "abuse of discretion." I believe that whether the evidence was sufficient to raise an issue as to each element of the defense was a question of law. Viewed under the proper standard, I nevertheless agree with the majority that the trial court erred in excluding the evidence and in precluding Appellant from presenting his defense

as well as violating Appellant's right to cross examine and confront the witnesses against him, requiring that we reverse the trial court's judgment and remand this cause to the trial court.

In refusing to admit the evidence supporting Appellant's defense of justification for his actions, the trial court concluded, as argued by the State, that there was "no evidence" of any new incident of physical choking of one of the children by Douglas, Brandy's fiancé, or sexual abuse by his ex-stepson, and thus, no evidence of an immediate necessity for Appellant to intervene to protect the children. The trial court opined that the alleged choking and sexual abuse had occurred over a year before, and that those events as well as the counseling session the previous week—in which Brandy's knowledge of the abuse as well as more graphic details of it were revealed to Appellant by their younger son for the first time—were all too remote in time to create any reasonable belief of immediate danger to the children to justify Appellant's conduct on their behalf.

This was not Appellant's argument. The immediate danger, as testified by Appellant in his bill of exceptions, was not the past events. They were, however, relevant, and the evidence of them should have been admitted as probative of Appellant's fear of an apparent, immediate danger from Appellant's standpoint at the time of the offense. When considering whether a defendant acted in self-defense (or in defense of a third party), the reasonableness of the defendant's actions must be viewed solely from the defendant's viewpoint. *Bennett v. State*, 726 S.W.2d 32, 37–38 (Tex. Crim. App. 1986) (holding reasonableness of

2

defendant's fear must be judged from the standpoint of the accused at the moment of the attack); *Johnson v. State*, 271 S.W.3d 359, 365–66 (Tex. App.—Beaumont 2008, pet. ref'd) (holding evidence from friends of defendant who had witnessed past acts of violence and verbal abuse directed toward her by deceased was evidence establishing defendant's "fear" of apparent danger at the time of stabbing).

As the court of criminal appeals pointed out in *Fielder v. State*, evidence of past violent acts against the defendant is an established method of proof in self-defense cases, because the law recognizes the fact that future conduct may be reasonably inferred from past conduct. 756 S.W.2d 309, 319–20 (Tex. Crim. App. 1988) (citing *Horbach v. State*, 43 Tex. 242, 251–52 (1875)); *cf. Thompson v. State*, 659 S.W.2d 649, 653 (Tex. Crim. App. 1983) (holding when self-defense is raised, "the deceased's reputation for violence and commission of prior specific acts of violence [against third parties] *which are known to the defendant* are probative of whether the defendant reasonably believed the force he used was immediately necessary to protect [them]").

Moreover, a person has the right to defend himself from "apparent danger" to the same extent as he would if the danger were real. *Johnson*, 271 S.W.3d at 365*.* The same evidence is probative of whether a defendant's belief is reasonable that force is immediately necessary in defense of a third party such as Appellant's children. Tex. Penal Code Ann. § 9.33 (West 2011). The danger Appellant testified that he believed rendered intervention immediately necessary

3

was that, unless he stopped Brandy, the children would again be exposed to harm by Brandy's fiancé and his ex-stepson, despite the divorce court's order prohibiting contact with them and despite the court-ordered supervision of Brandy's visitation with the children, because Brandy had allowed the boys to be around her fiancé and his ex-stepson in violation of the divorce court's order, had failed to supervise them when they were, and had continued her relationship with him even after the abuse became known. The situation—as well as the danger—was ongoing. The boys were sitting in Brandy's vehicle, and she was refusing to listen to Appellant's concerns and was about to drive away with them. The issue is whether Appellant's belief was reasonable at that time that his intervention was immediately necessary to attempt to protect the children from exposure to harm from Brandy's fiancé or his ex-stepson.

As the majority opinion points out, Appellant testified in his bill that, when Brandy came to pick up the children, he believed she was going to violate the family court's order not to allow contact of the children with Douglas or his ex-stepson. Brandy admitted she had previously violated the family court's order and had lied to that court that she was no longer living with Douglas when she was. Moreover, Brandy admitted she had planned to marry Douglas that very weekend and did so. According to Appellant's testimony, Brandy had denied the boys' allegations of choking by Douglas and dismissed the evidence of sexual abuse. The younger son had, at the most recent counseling session, corroborated his brother's statements for the first time that he had told Brandy of

4

the choking and sexual abuse but that she had sat in another room watching television while the abuse occurred. It is undisputed that both she and her mother refused to discuss Appellant's fear and concern about the boys when they came to pick them up.

Brandy, herself, succinctly described Appellant's state of mind at the time of the offense, acknowledging (in her testimony on Appellant's bill of exceptions) that Appellant's "assumption" was that the boys were not safe going with her. She disagreed with Appellant's assumption the boys were in danger and maintained the children were safe with her, but it matters not whether the boys were, in fact, in danger from Douglas or his ex-stepson when Brandy and her mother drove off with them. According to Appellant, he believed they were, and he had a right to defend the children from apparent danger as fully and to the same extent as he would had the danger been real, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time. *See Johnson*, 271 S.W.3d at 365–66.

The court of criminal appeals has made clear that a defendant has the burden of production of some evidence on each element of a justification defense, holding that a defense is raised "if there is some evidence, from any source, on each element of the defense that, *if believed by the jury*, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007) (emphasis added), *cert. denied*, 553 U.S. 1059 (2008). The trial court does not weigh the evidence or determine the

5

credibility of the witnesses, including the credibility of the defendant, but must assume the credibility of evidence supporting the defense. *Shaw v. State*, 181 S.W.3d 450, 452 (Tex. App.—Waco 2005), *aff'd*, 243 S.W.3d at 660.

On appeal, we review the issue of whether a defense of justification is raised by the evidence de novo as a question of law. *Shaw*, 243 S.W.3d at 658; *Shaw*, 181 S.W.3d at 452. Neither at this stage nor at the stage of submission to the jury do we apply the usual rule of appellate deference to the trial court's ruling. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Johnson*, 271 S.W.3d at 367. On de novo review, we afford no deference to the trial court's determination and consider the matter as if we were the court of first instance. *See Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring). As does the trial court, we view the evidence relied on by the defendant to raise the defense in the light most favorable to the defendant. *See Bufkin*, 207 S.W.3d at 782; *Johnson*, 271 S.W.3d at 366, 367.

It appears that the trial court here, despite its care in listening to the arguments of Appellant and the testimony offered by Appellant's bill of exceptions (including questioning by the court), did not credit Appellant's testimony and did not view the evidence in the light most favorable to Appellant but, instead, weighed the credibility of Appellant's proffered testimony, itself, and concluded that it was simply not credible that there was any immediate danger to the children and no reasonable basis for Appellant to believe that there was.

In essence, by excluding Appellant's evidence, the trial court granted a directed verdict against Appellant on his justification defense. If each element of a defense is raised by some evidence, the defendant is entitled to an instruction to the jury on that defense, regardless of whether the evidence supporting the defense is strong, weak, feeble, impeached or contradicted, and even if the trial court is of the opinion that the testimony raising the defense is not credible. *Shaw*, 243 S.W.3d at 657–58 (citing Tex. Penal Code Ann. § 2.03 (West 2011)); *see Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). The defendant's burden of production includes presenting some evidence that he "reasonably" believed his conduct was immediately necessary to avoid unlawful force to himself or third parties. *Shaw*, 243 S.W.3d at 657. The evidence detailed in Appellant's bill regarding the prior conduct of Brandy, her fiancé, and his ex-stepson was some evidence to support the reasonableness of Appellant's belief in that regard, and whether Appellant's belief was "reasonable" was for the jury and not the trial court to decide. *See Juarez v. State*, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010) (both admitting and denying requisite mental state entitled defendant to instruction on the necessity defense; was jury's province to resolve factual issue).

Viewing the testimony excluded by the trial court in the light most favorable to Appellant, and assuming the credibility of the evidence supporting his defense, I would conclude that Appellant proffered some evidence, more than a scintilla, raising an issue of fact on each element of the defense of justification, and that

7

the trial court thus erred in excluding it. Appellant admitted the elements of the offense and, as pointed out by the majority, without his evidence of justification, there was no dispute left for the jury to resolve. The State exacerbated the trial court's error by emphasizing in its closing argument that Appellant had "no excuse," which, of course, was only true after the State had convinced the trial court to exclude Appellant's evidence of justification. I agree that Appellant was entitled to have his defense heard and submitted to the jury.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PUBLISH

DELIVERED: December 18, 2014

8